JEAN E. WILLIAMS
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
LUTHER L. HAJEK
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO  80202
Tel.:  (303) 844-1376
Fax:  (303) 844-1350
E-mail:  luke.hajek@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>and<br><br>NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>      Plaintiffs,<br><br>v.<br><br>U.S. BUREAU OF LAND MANAGEMENT, *et. al.*,<br><br>      Defendants,<br><br>and<br><br>CADIZ, INC., *et al.*,<br><br>      Defendant-Intervenors. | Case No. 2:17-cv-08587-GW-AS<br>Case No. 2:18-cv-06775-GW-AS<br>Consolidated<br><br>**DEFENDANTS' LOCAL RULE 56-2 STATEMENT OF GENUINE OF DISPUTES OF MATERIAL FACT IN RESPONSE TO NATIONAL PARKS CONSERVATION ASSOCIATION'S STATEMENT OF UNCONTROVERTED FACTS**<br><br>Hearing Date:  June 20, 2019<br>Time:  8:30 a.m.<br>Courtroom:  9D<br>Judge: Honorable George H. Wu |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*

| NPCA's Uncontroverted Facts and Supporting Evidence | Defendants' Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.  Cadiz, Inc. is a Los Angeles-based resource development company.<br><br>*Evidence*:  BLM-002807 | 1.  Undisputed |
| 2. Since its founding in 1983, Cadiz, Inc.'s property interest has grown to more than 35,000 mostly-contiguous acres ("Cadiz Property") in the Cadiz and Fenner Valleys, which are located in the Mojave Desert portion of eastern San Bernardino County, California | 2.  Undisputed |
| 3.  Cadiz, Inc., in collaboration with the Santa Margarita Water District ("SMWD") and other water providers, developed the Cadiz Valley Water Conservation, Recovery, and Storage Project ("Cadiz Project") to "convey for a 50-year span an annual average of 50,000 acre-feet (16.3 billion gallons) of water pumped from [an ancient] groundwater aquifer to the Colorado River Aqueduct . . . for a distance of approximately 43 miles."<br><br>*Evidence*:  BLM-004955; BLM-002263. | 3.  Undisputed |
| 4.  "The [Cadiz] Project area, which would be sited on Cadiz Property, is located at the confluence of the Fenner, Orange Blossom Wash, Bristol and Cadiz Watersheds (Watersheds), which span over 2,700 square miles."<br><br>*Evidence*: BLM-004955. | 4.  Undisputed |
| 5.  In 2001, Cadiz, Inc. and the Metropolitan Water District ("Metropolitan") proposed a pipeline | 5.  Undisputed |

| | |
|---|---|
| project to the Bureau of Land Management ("BLM") that would cross BLM-managed lands outside of any railroad right-of-way. "An [Environmental Impact Statement/Environmental Impact Report ("EIS/EIR")] was prepared and BLM offered a [right-of-way] grant for the project in 2002." <br><br> *Evidence*: BLM-002740. | |
| 6. "The Metropolitan board of directors voted to reject the terms and conditions[of the EIS/EIR] and not to proceed with the project. Consequently, no right-of-way was issued. The case file was closed." <br><br> *Evidence*: BLM-002740. | 6. Undisputed |
| 7. In 2005, Cadiz, Inc. "resumed interest in the project," and on September 17, 2008, Cadiz, Inc. entered into a 99-year Longitudinal Lease Agreement ("2008 Lease") with the Arizona and California Railroad Co. ("ARZC") for a pipeline along ARZC's 1875 Act right-of-way that crosses BLM- managed public lands in the Southern California desert. <br><br> *Evidence*: BLM-002740; BLM-005015; BLM-002262. | 7. Undisputed |
| 8. Most of the land underlying ARZC's 1875 Act right-of-way is federal land administered by BLM. <br><br> *Evidence*: BLM-002107. | 8. Undisputed |
| 9. The federal land underlying ARZC's 1875 Act right-of-way falls within the "California Desert | 9. Undisputed |

| | |
|---|---|
| Conservation Area" established by Subchapter VI of the Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1781 (2012).<br><br>*Evidence*:  BLM-002108-09. | |
| 10.  A substantial portion of the federal land underlying ARZC's 1875 Act right-of-way falls within the boundary of Mojave Trails National Monument.<br><br>*Evidence*:  BLM-002108-09. | 10.  Partially disputed.<br><br>The cited document does not state that a "substantial" portion of ARZC's 1875 Act right-of-way is within the boundary of Mojave Trails National Monument.  Instead, it states only that "[p]ortions of the proposed pipeline are within the Mojave Trails National Monument," which is undisputed.<br><br>*Evidence:* BLM2108-09 |
| 11.  ARZC's predecessor was granted a right-of-way under the authority of the 1875 Act between 1905 and 1911. ARZC's line extends over 200 miles from Cadiz, California to Parker, Arizona.<br><br>*Evidence*:  BLM-002257; BLM-002268. | 11.  Undisputed |
| 12.  The 2008 Lease purported to allow Cadiz, Inc. to construct, operate, and maintain a subsurface water-conveyance pipeline and a power line between the Cadiz Property and the Colorado River Aqueduct along a 43-mile portion of the ARZC railroad right-of-way. This segment of the ARZC right-of-way runs between milepost 189.0 at Cadiz, California and milepost 144.0 at Freda, California in | 12.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          4

| | |
|---|---|
| San Bernardino County. The ARZC right-of-way is approximately 200-feet-wide, extending about 100 feet from either side of the railroad centerline.<br><br>*Evidence*:  BLM-000414-26. | |
| 13.  Pursuant to the 2008 Lease, Cadiz, Inc. plans to transport the aquiferous water via a 43-mile-long, seven-foot-wide pipeline connecting the Cadiz, Inc. property to the California River Aqueduct, near Rice, California.<br><br>*Evidence*:  BLM-000414; BLM-004959 (map of Cadiz Project coverage). | 13.  Undisputed |
| 14.  More specifically, the 2008 Lease grants Cadiz, Inc. the right to lease: "(a) an area of the [the ARZC Railroad] Property approximately fifteen feet (15') wide and approximately fifteen feet (15') deep, located more than fifty feet (50') northeasterly from the centerline of the existing railroad track to install, construct, operate, maintain, repair, renew and remove one (1) underground water conveyance pipeline approximately seven feet (7') in diameter; (b) as many as four (4) areas of the Property of sufficient size to install, construct, operate, maintain, repair, renew and remove underground manifold pipelines approximately twenty-four inches (24") to thirty-six inches (36") in diameter, that will cross beneath the existing railroad track; (c) an area of the Property located more than seventy-five feet (75') | 14.  Undisputed |

| | |
|---|---|
| southwesterly from the center line of the existing railroad track of sufficient size to install, construct, operate, maintain, repair, renew and remove electrical power poles designed to support an overhead electrical power line or, alternatively, to install, construct, operate, maintain, repair, renew and remove an underground electrical power line." *Evidence*: BLM-000414. | |
| 15.  Interior's 1989 M-Opinion ("M-36964"), promulgated on January 5, 1989, expressed official Interior policy regarding 1875 Act rights-of-way uses from 1989 to 2011. *Evidence*:  BLM-007997; BLM-008037. | 15.  Undisputed |
| 16.  In M-36964, Interior concluded that "[u]nder the 1875 Act, railroads were granted an 'easement.' The scope of this easement, unlike an ordinary common-law easement, is an interest tantamount to fee ownership, including the right to use and authorize others to use (where not inconsistent with railroad operations) the surface, subsurface, and airspace." *Evidence*:  BLM-008010. | 16.  Undisputed |
| 17. Under M-36964, Interior "had allowed the railroad grantee to enter into agreements for a third party to use portions of such [rights-of-way] across Department-managed lands without authorization from the Department." *Evidence*:  BLM-002807. | 17.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*                6

| | |
|---|---|
| 18. M-36964 "addressed the specific question of whether MCI Telecommunications Corporation ('MCI') had to obtain a [right-of-way] grant or permit from the BLM in order to install a fiber optic communications line and associated equipment shelters within existing railroad [rights-of-way] granted to the Southern Pacific Transportation Co. ('Southern Pacific'), or its predecessors under various railroad [right-of-way] acts."<br><br>*Evidence*: BLM-004933. | 18. Undisputed |
| 19. In opposition to the conclusions set forth in M-36964, a June 2009 Congressional Research Service ("CRS") analysis concluded that easements granted under the 1875 Act "are limited to uses for railroad purposes, excluding non-rail activities analogous to the [proposed Cadiz Project]."<br><br>*Evidence*: BLM-007896-97. | 19. Undisputed |
| 20. In August 2011, BLM contacted Cadiz, Inc. "requesting specific information about the [P]roject. BLM . . . had several correspondence exchanges with Cadiz, Inc., ARZC and [SMWD] [between August 2011 and May 2012] to determine BLM's jurisdiction. The last correspondence was received on May 22, 2012 but the information provided [was] not . . . sufficient enough [for BLM to] make a determination."<br><br>*Evidence*: BLM-004631. | 20. Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          7

| | |
|---|---|
| 21. While their correspondence took place, Interior partially withdrew M-36964 by promulgating M-37025 in November 2011.<br><br>*Evidence*: BLM-008037. | 21.  Undisputed |
| 22. In M-37025, Interior concluded that "M-36964's conclusions with respect to the activities that a railroad may undertake, or authorize others to undertake, within an 1875 Act [right-of-way] are not consistent with the [1875] Act, or the established rule that railroad [right-of-way] grants are liberally construed in favor of the purposes for which they were enacted, but otherwise are subject to the general rule that any ambiguities in grants of land from the public domain are to be resolved in favor of the Federal government . . . ."<br><br>*Evidence*: BLM-008038. | 22.  Undisputed |
| 23. In addition, Interior concluded that "[w]ithin an 1875 Act [right-of-way], a railroad's authority to undertake or authorize activities is limited to those activities that derive from or further a railroad purpose, which allows a railroad to undertake, or authorize others to undertake, activities that have both railroad and commercial purposes, but does not permit a railroad to authorize activities that bear no relationship to the construction or operation of a railroad."<br><br>*Evidence*: BLM-008038. | 23.  Undisputed |
| 24. Approximately one month after the issuance of M-37025, Cadiz, Inc. and | 24.  Undisputed |

| | |
|---|---|
| ARZC amended the 2008 Lease to include six speculative design features that Cadiz, Inc. and ARZC claim would "support the existing railroad," including:<br>"fire hydrants placed along railroad tracks; [an] [a]ccess road to be constructed on leased area for railroad company for maintenance purposes or in case of emergencies such as rail car derailment; [a]ccess to 10,000 gallons of water per day for vegetation control, washing rail cars, offices, and other contemplated improvements; [a]ccess to power at meters located along the railroad tracks and emergency access to power at any location; [a]ccomodations for passenger terminals and water service associated with the steampowered locomotives . . . the future; [and] the [r]ight to connect and deliver water to any future water production facilities within the right-of-way to the pipeline and facilities."<br><br>*Evidence*: BLM-004816-17. | |
| 25. "The ARZC rail line has existed and operated for over 100 years without water facilities such as those being proposed" in the Cadiz Project.<br><br>*Evidence*: BLM-002264. | 25. Undisputed |
| 26. "The [ARZC] rail line that runs through the 43 mile long stretch of public land proposed for collocation with the pipeline has 42 creosote treated bridges."<br><br>*Evidence*: BLM-002268. | 26. Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*        9

| | |
|---|---|
| 27. "The *American Railway Engineering and Maintenance of Way Association* (2012) (railroad manual) recommends dry sand as more effective than water for suppression of minor fires on creosoted structures, recommends fire barriers for protection of bridges from large fires, and does not make mention of the use of water-supplied fire hydrants in suppressing fires on bridges."<br><br>*Evidence*:  BLM-002268. | 27.  Undisputed<br><br>To be clear, this is a statement from the analysis supporting BLM's 2015 determination, not BLM's Determination in 2017 regarding the Cadiz Pipeline.<br><br>*Evidence*: BLM-002268. |
| 28. "By railroad standards as described by the railroad industry's manual, water is not the preferred method of fire suppression on creosoted structures."<br><br>*Evidence*:  BLM-002268. | 28.  Undisputed<br><br>To be clear, this is a statement from the analysis supporting BLM's 2015 determination, not BLM's Determination in 2017 regarding the Cadiz Pipeline.<br><br>*Evidence*: BLM-002268. |
| 29. "There are no fire hydrants currently installed along the entire 200-mile-plus length of the railroad line that extends from Cadiz, California to Parker, Arizona."<br><br>*Evidence*:  BLM-002268. | 29.  Undisputed<br><br>To be clear, this is a statement from the analysis supporting BLM's 2015 determination, not BLM's Determination in 2017 regarding the Cadiz Pipeline.<br><br>*Evidence*: BLM-002268. |
| 30. Cadiz, Inc. has not demonstrated "plans for a fire suppression system beyond the 43-mile stretch through public land."<br><br>*Evidence*:  BLM-002268. | 30.  Undisputed.<br><br>To be clear, this is a statement from the analysis supporting BLM's 2015 determination, not BLM's Determination in 2017 regarding the Cadiz Pipeline. |

| | |
|---|---|
| | *Evidence*: BLM-002268; *see also* BLM-000001; BLM-000004; BLM-000007. |
| 31. "Additionally, there have been no fires on these [rights-of-way] in their 100-year-plus lifetime." <br><br> *Evidence*:  BLM-002268. | 31.  Undisputed |
| 32. On December 2, 2011, BLM issued IM-2012-038 to provide interim guidance on implementing M-37025, and concluded that "[d]etermining whether a particular activity derives from or furthers a railroad purpose requires a case-by-case evaluation." <br><br> *Evidence*:  BLM-004926. | 32.  Undisputed |
| 33. On December 23, 2011, the President Barack Obama signed House appropriations bill H.R. 2055 "specifying that no appropriated funding should [be] spent for approval of a right-of-way related to the Cadiz Project, and that a right-of-way for water conveyance should not be approved unless it is within the scope of the existing [right-of-way]." <br><br> *Evidence*:  BLM-004922. | 33.  Undisputed |
| 34. "On May 4, 2012 BLM sent a letter to ARZC requesting the company to provide specific information on how the proposed pipeline described in the [2008 Lease] furthers railroad purposes, and whether these design features are consistent with standard railroad industry practices." <br><br> *Evidence*:  BLM-002876-77. | 34.  Undisputed |

| | |
|---|---|
| 35. "ARZC provided a response letter that did not fully address the questions, but cited that fire hydrants are needed [because] fire suppression is 'a chronic and historical challenge in the rail industry.'" ARZC's letter also requested that BLM meet with ARZC.<br><br>*Evidence*: BLM-002877. | 35.  Undisputed |
| 36. The BLM California State Director's response to a Final Environmental Impact Report ("EIR") conducted by Santa Margarita Water District ("SMWD") as lead agency for California Environmental Quality Act ("CEQA") review of the Cadiz Project "point[ed] out that the EIR. . . erroneously concluded that BLM approval [would] not be necessary for this project, and that BLM approval [would] be required until the project proponents can clearly demonstrate otherwise." The Director's response also indicated that "FLPMA authorizations [would] be required for the phase of the project that . . . proposes to convert existing BLM authorized natural gas pipeline [rights-of-way] to water conveyance."<br><br>*Evidence*: BLM-002877. | 36.  Undisputed |
| 37. On August 23, 2012, representatives from BLM California met with representatives from Cadiz, Inc., ARZC, SMWD, and BLM's Pacific Northwest Regional Solicitor's Office. At this meeting, the attendees discussed the following concerns with the original project: impacts to | 37.  Partially Disputed.<br><br>Plaintiff mischaracterizes the notes from this meeting.  While the participants of this meeting did discuss the identified concerns with the original project, they also discussed how Cadiz sought to address those concerns in the current |

| | |
|---|---|
| springs, fugitive dust, land subsiding, and introduction of brine to the aquifer.<br><br>*Evidence*:  BLM-002879. | version of the project, which was reflected in the EIR analysis.  The meeting notes also reflect that a representative from Rail America/Arizona & California Rail Co. explained that the Cadiz Project would benefit the railroad through access to water, power generation, and the construction of a new access road.<br><br>*Evidence*:  BLM-002879. |
| 38. At the August 23, 2012 meeting, ARZC representatives claimed that the Cadiz Project could provide some benefits to the rail operations, but specific questions sent to the ARZC, Cadiz, Inc., and SMWD prior to the meeting were not directly addressed. According to Cadiz, Inc., "they did not have time to prepare thorough responses and because the project is constantly changing[,] the data now available would be incomplete."<br><br>*Evidence*:  BLM-002879- 80. | 38.  Partially Disputed.<br><br>The document states that ARZC representatives stated that the Cadiz Project would provide benefits to the railroad—there is no basis for Plaintiff's assertion that these benefits were merely "claimed."<br><br>Further, while the meeting notes reflect that the "details of the project were still tentative," it should be noted that the meeting took place in August 2012, three years before BLM's prior determination in 2015.<br><br>Finally, the meeting notes also reflect that, "Solicitor Temi Josephson said that an analysis of the pipeline would be based on a reasonable person standard, i.e., whether an average person could reasonably conclude that a 7" pipeline is essential or provides benefits to a railroad."<br><br>*Evidence*: BLM-002879-80 |
| 39. "On December 19, 2012, BLM sent [Cadiz, Inc. and ARZC] a follow-up | 39.  Undisputed |

| | |
|---|---|
| letter to request specific plans showing how the 7-foot pipeline [met] or further[ed] railroad purposes as discussed in the August meeting. [Cadiz, Inc.] responded by letter on January 16, 2013 with a legal argument defending their project as within the scope of the 1875 [Act] right-of-way. [That letter] was followed up with a meeting in February between BLM, Cadiz, Inc., SMWD, ARZC and the Regional Solicitor's Office to further discuss the project details, though no outcome was reached." <br><br> *Evidence*:  BLM-002742. | |
| 40. "On July 12, 2013, [Cadiz, Inc.] sent a letter to BLM, requesting that it make a determination on the project. BLM responded by letter in August that the evidence-gathering was ongoing. [Cadiz, Inc.] then sent another letter on September 20, 2013 expressing frustration at the lack of response. BLM responded that it was awaiting publication of an Instructional Memorandum by the Washington Office that will outline the process for evaluating 1875 Railroad rights-of-way, and that the guidance from this IM [would] be used to evaluate the Cadiz [P]roject." <br><br> *Evidence*:  BLM-002742. | 40.  Undisputed |
| 41. On September 19, 2013, Cadiz, Inc. announced that it entered into a new trackage rights agreement with ARZC to "facilitate the development of regularly scheduled steam train excursions through the celebrated | 41.  Undisputed |

| | |
|---|---|
| Mojave Desert between Cadiz, California and Parker, Arizona." *Evidence*:  BLM-002779. | |
| 42. Cadiz, Inc. stated that: "The proposed new steam train operation, named the Cadiz Southeastern Railway ('CSER'), [would] be powered by water made available from the [Cadiz Project] and, following the completion of additional permitting, [would] also feature a new museum and cultural center at the Cadiz Ranch property dedicated to the promotion of local desert and railroad history." *Evidence*:  BLM-002779. | 42.  Undisputed |
| 43. In addition, "[CSER] would operate its own steam powered locomotives, passenger cars and terminals. The CSER excursion train operation would augment current traffic on the ARZC and not interfere with existing freight operations. In consideration of the access provided for the operation of CSER, the ARZC would receive an annual revenue payment of up to $500,000 per year, once the trains are operational following implementation of the Cadiz Water Project." *Evidence*:  BLM-002778. | 43.  Undisputed |
| 44. As BLM concluded, "[A] desert-exploring excursion train assumes a public land use that exceeds the scope of the 1875 Act [rights-of-way], and would therefore be considered a commercial recreational use of public | 44.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          15

| | |
|---|---|
| land because it proposes to make a profit by charging participants for recreational use of public land." <br><br> *Evidence*:  BLM-002279-80. | |
| 45. On August 11, 2014, BLM issued IM 2014-122, which, pursuant to M-37025, provided a step-by-step process for evaluation of an activity located within a right-of-way granted under the 1875 Act. The process included information gathering, evaluation, an authorized officer's consideration of the recommendation, and notification to the project proponents of the BLM authorized officer's determination. <br><br> *Evidence*:  BLM-002726-33. | 45.  Undisputed |
| 46. The case-by-case evaluation described in IM 2014-122 directs BLM Field Office Officials to consider the following factors in determining whether a proposed activity within an 1875 Act right-of-way derives from or furthers a railroad purpose: <br><br> "[1] The specific purpose of the 1875 Act, which was to give railroads the exclusive right to use and occupy the granted [right-of-way] for railroad purposes; [2] The concept that, even though railroad ROW grants are generally broadly construed, any doubts about the scope of such grant are still to be resolved in the Government's favor. As a practical matter, this means that a railroad ROW holder and/or the party arguing that a particular activity is within the scope of an 1875 Act ROW must provide | 46.  Undisputed |

| | |
|---|---|
| sufficient evidence to overcome any doubts as to whether a particular activity is within the scope of the ROW; [3] The relationship between the activity and the railroad – e.g., does the activity in question originate or issue from, help promote, and/or advance the railroad purposes; and [4] Historical industry practice with respect to the activity in question – e.g., is the proposed activity one that has been used by railroads previously in furtherance of a railroad purpose." *Evidence*: BLM-002727. | |
| 47. On August 20, 2014, BLM sent a letter to Cadiz, Inc. President and CEO Scott Slater alerting Cadiz, Inc. of its issuance of IM 2014-122. In the letter, BLM provided Cadiz, Inc. with its understanding of the Cadiz Project and with a list of questions for clarification. *Evidence*: BLM-002723-25. | 47.  Undisputed |
| 48. In addition, BLM "ask[ed] that [Cadiz, Inc.] provide answers to the . . . questions and correct any errors or omissions [found] in the project description [BLM] provided within 30 days of receipt of [the] letter." BLM explained that, "[i]n the absence of a response, [BLM would] proceed to make a determination based on the project as described [by BLM in the letter]." *Evidence*: BLM-002725. | 48.  Undisputed |
| 49. On September 17, 2014, Cadiz, Inc. responded to BLM's August 20, 2014 letter "by way of a telephone call | 49.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*                    17

| | |
|---|---|
| from its counsel to the Office of the Solicitor, Department of the Interior, Pacific Southwest Region."<br><br>*Evidence*: BLM-002715. | |
| 50. BLM acknowledged, "During that conversation, counsel for Cadiz, Inc. indicated that the BLM-presented project description was inaccurate, especially in light of new project design features. Moreover, counsel for Cadiz, Inc. requested a face-to-face meeting to discuss the significant changes to the proposed action, with a final, written proposal to follow such a meeting."<br><br>*Evidence*: BLM-002715. | 50.  Undisputed |
| 51. E-mail exchanges followed the phone call, including a request from Cadiz, Inc. to extend the 30-day time limit to answer BLM's questions, which BLM granted.<br><br>*Evidence*: BLM-002715. | 51.  Undisputed |
| 52. On December 10, 2014, Cadiz, Inc. representatives and BLM officials met to discuss the Cadiz Project, at which time BLM requested that Cadiz, Inc. provide a "final and fact-specific written Project description for evaluation according to [IM 2014-122]."<br><br>*Evidence*: BLM-002471. | 52.  Undisputed |
| 53. On January 9, 2015, Cadiz, Inc. provided BLM with BLM's requested description.<br><br>*Evidence*: BLM-002471-75. | 53.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          18

| | |
|---|---|
| 54. On October 2, 2015, BLM sent its final evaluation of the Cadiz Project, pursuant to M-37025 and IM-2014-122, to Cadiz, Inc. and the railroad.<br><br>*Evidence*: BLM-002243. | 54.  Undisputed |
| 55. In the evaluation, "BLM . . . determined that the Project does not derive from or further a railroad purpose."<br><br>*Evidence*: BLM-002244. | 55.  Undisputed |
| 56. Indeed, "BLM . . . reached an administrative determination that the Project as described cannot be authorized by ARZC because it is outside the scope of ARZC's [right-of-way] grants held under the 1875 Act."<br><br>*Evidence*: BLM-002243-44. | 56.  Undisputed |
| 57. BLM specifically found five of the six Project components did not further a railroad purpose, and that the washing stations, weed control, and water supply functions were only "possible, not proposed, future improvements[,]" and "there is nothing for BLM to review or evaluate."<br><br>*Evidence*: BLM-002243-49, 66. | 57.  Partially Disputed.<br><br>Plaintiff's paraphrased and quoted language is partially accurate.  BLM's Summary Evaluation and longer BLM Recommendation, which Plaintiff refers to, concluded that three of the six components (i.e., access road, powerlines and supported facilities, and the excursion train) "may serve a railroad purpose," but that these components are bound to the proposed water conveyance pipeline that does not serve a railroad purpose.  *See* BLM-002253, BLM-002272-73, BLM-002275-76, BLM-002280.  BLM found that the water pipeline itself could not serve a railroad purpose because "the origin" of the pipeline was not a railroad |

| | |
|---|---|
| | purpose. BLM-002266. With respect to the fire suppression system component, BLM's Recommendation stated that generally a fire suppression system could further a railroad purpose, but concluded that as presented such a system was "not justified" and would need BLM authorization. BLM-002268. With respect to the two remaining components, *i.e.*, power generation and use of the water by the railroad for other purposes, BLM stated that "[t]he relationship between power generation along this segment of railroad and the furtherance of railroad purposes is, at best, unclear," and potential uses of the water by the railroad, such as "railcar washing stations, weed control, and water supply to future warehouses and office buildings were presented only as possible, not proposed, future improvements," and therefore BLM did not evaluate them. BLM-002266.<br><br>*Evidence:* BLM 2243-80 |
| 58. BLM stated that:<br><br>"[t]he water conveyance pipeline with in-line turbines and the fire suppression system including the fiber optic sub-component, do not derive from or further a railroad purpose under the standard set in the 2011 M-Opinion for 1875 Act [rights-of-way] and the BLM policy found in IM 2014-122. To be conducted on public land, these activities would require approval from the BLM. The access road, the | 58. Undisputed |

| | |
|---|---|
| power line and facilities it supports, and the excursion train including appurtenant facilities, likewise do not derive from or further a railroad purpose as presented, due to their reliance on the pipeline. However, an evaluation can be conducted on them on their own merits, apart from the conveyance pipeline activity, if more detailed information is presented." *Evidence*:  BLM-002249. | |
| 59. In addition, BLM stated that "[i]n order to proceed with the proposed Project, Cadiz, Inc., ARZC, or other parties involved will require BLM authorization for a right-of-way for the Project under the regulations set forth in 43 C.F.R. Part 2800." *Evidence*:  BLM-002244. | 59.  Undisputed |
| 60. On October 5, 2015, Cadiz, Inc. sent a reply letter to then BLM Director Neil Kornze, "[explaining] why BLM's determination is contrary to law and must be rescinded." *Evidence*:  BLM-002238. | 60.  Undisputed |
| 61. On February 10, 2016, Director Neil Kornze sent a response letter to Cadiz, Inc. President and CEO Scott Slater, informing Cadiz Inc. that "the administrative determination for the Cadiz Project was "developed based on a careful consideration of the project and relevant on-the-ground conditions by the BLM staff most familiar with those resources." In response to Slater's interest in whether such determinations can be revisited, | 61.  Undisputed |

| | |
|---|---|
| Director Kornze indicated that he asked Jerome Perez, the BLM California State Director, "to sit down with [Cadiz, Inc. representatives] to review this issue and where things stand."<br><br>*Evidence*:  BLM-002237. | |
| 62. On March 14, 2016, Cadiz, Inc. made available its "Form 10-K Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2015." Therein, Cadiz, Inc. stated that "if the BLM [would] not change [the 2015 Administrative Determination], then [Cadiz, Inc. would] need to file a right-of-way permit application with the BLM for a review of the pipeline's use. . . and/or seek to clarify a railroad's property rights in U.S. Federal Court. Both alternatives [would] likely result in a delay of final Project implementation and we cannot reasonably predict the outcome of either process."<br><br>*Evidence*: *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. CV 17-8587-GW (ASX), 2018 WL 3004594, at *3 (C.D. Cal. June 8, 2018) [ECF No. 31]; https://www.sec.gov/Archives/edgar/Data/727273/0000727316000047/Form10-k_2015.htm | 62.  Disputed<br><br>The report is an extra-record document and therefore may not be considered for purposes of deciding the merits of Plaintiff's claims.  *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). |
| 63. On March 22, 2016, several House members requested that the House Subcommittee on Interior, Environment, and Related Agencies include certain language to define | 63.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          22

| | |
|---|---|
| "railroad purpose" under the 1875 Act in the FY2017 Interior and Environment Appropriations bill.<br><br>*Evidence*:  BLM-002227-29. | |
| 64. On March 23, 2016, BLM California State Director Jerome Perez sent a letter to Scott Slater to follow-up on a March 9, 2016 meeting between BLM staff and Slater regarding the 2015 BLM Determination on the proposed Cadiz Project. In the letter, State Director Perez reiterated that Cadiz, Inc. had "the option of submitting a request for a [right-of-way] proposal for [BLM's] consideration," but noted that Slater and counsel had expressed that the right-of-way application was not the "desired option."<br><br>*Evidence*:  BLM-002226. | 64.  Undisputed |
| 65. On March 31, 2016, in a follow-up letter to State Director Perez's March 23, 2016 letter, Slater indicated that Cadiz, Inc. was "evaluating the best method to further describe how the $13 million in investments included in the Project for the benefit of the railroad further[ed] non-speculative railroad purposes."<br><br>*Evidence*:  BLM-002224-25. | 65.  Undisputed |
| 66. On December 14, 2016, President-elect Donald Trump published his administration's "Priority List" for "Emergency & National Security Projects."<br><br>*Evidence*:  BLM-002172-2223. | 66.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          23

| | |
|---|---|
| 67. The Cadiz Project appeared as Number 15 on the Priority List, described as a $250 Million project "designed to capture and conserve billions of gallons of renewable native groundwater flowing beneath Cadiz-controlled property in California's Mojave Desert that is currently being lost to evaporation and salt contamination at nearby dry lakes."<br><br>*Evidence*:  BLM-002188. | 67.  Undisputed |
| 68. The Priority List indicated that the Cadiz Project was privately funded, 95% permitted, would create 5,900 direct jobs, and that "[t]wo additional projects worth $1.4 billion [are] available."<br><br>*Evidence*:  BLM-002188. | 68.  Undisputed |
| 69. On January 6, 2017, BLM Realty Specialist for Roads, Railroads, and Pipelines Erica Pionke, along with BLM officials Shelley McGinnis, John Kalish, Stephen Fusilier, Robert Jolley, and Larry Carpool, met to discuss M-37025, IM 2014-122, and the latest draft of the Federal Register Notice ("FRN"), which served to "notify the public" of IM 2014-122.<br><br>*Evidence*:  BLM-000977. | 69.  Undisputed |
| 70. On January 19, 2017, BLM official Cynthia Moses-Nedd sent BLM officials Matthew Allen, Craig Leff, Jeff Kraus, and Assistant Director Michael Nedd, "BLM-related projects," including President-elect Trump's Priority List. | 70.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          24

| | |
|---|---|
| *Evidence*: BLM-002115-67. | |
| 71. On February 1, 2017, Acting Deputy Secretary James Cason held a video call with lobbyist Luke Johnson and lawyer Larry Jensen, both of the law firm Brownstein Hyatt Farber Schreck ("Brownstein"), which represents Cadiz, Inc.<br><br>*Evidence*: BLM-002114. | 71.  Undisputed |
| 72. On February 6, 2017, Special Assistant to the Secretary Kathleen Benedetto emailed Acting Deputy Secretary James Cason requesting a meeting between Benedetto, Cason, and Katherine Macgregor, to "discuss the Cadiz Pipeline issue . . . ."<br><br>*Evidence*: BLM-002111. | 72.  Undisputed |
| 73. On February 9, 2017, Deputy State Director Danielle Chi emailed John Kalish to arrange a call to "discuss the 1875 RR Act request [he] referenced" in a February 9, 2017 email to Joseph Stout.<br><br>*Evidence*: BLM-002110. | 73.  Partially Disputed.<br><br>While this email did refer to a need for a briefing paper for the Cadiz Project, the primary 1875 Act issue in question related to a qui tam lawsuit and has nothing to do with the Cadiz Project.<br><br>*Evidence*: BLM-002110 |
| 74. Kalish had requested a "briefing paper, including [the ARZC 1875 Act right-of-way] and the Cadiz Project that [Nedd] would use in a discussion with the transition team." Kalish previously sent a "briefing" to Chi on "an 1875 RR Act issue" and had a follow-up discussion with Nedd. Kalish wrote that he "[would] stay as the [Washington Office] contact for this for a while due to the . . . need to | 74.  Partially Disputed.<br><br>*See* response to Paragraph 73.  The primary issue referenced in this e-mail related to a qui tam lawsuit that was under seal because it was the subject of an ongoing an investigation by the U.S. Department of Justice to determine whether the United States would seek to intervene as the lead Plaintiff in the qui tam lawsuit.  This |

| | |
|---|---|
| minimize the size of the team to need to know staff." *Evidence*: BLM-002110. | issue has nothing to do with the Cadiz Project. *Evidence:* BLM-002110 |
| 75. On February 15, 2017, Acting Director of BLM Kristin Bail issued an "Information/Briefing Memorandum" on the Cadiz Project for the BLM Assistant Secretary of Land and Minerals Management. Bail wrote that "BLM has indicated to [Cadiz, Inc.] that the project could be re-evaluated if there is new information, but no such information has been provided." *Evidence*: BLM-002108. | 75.  Undisputed |
| 76. Additionally, Bail wrote that "[t]he proposed project is located in the district of Congressman Paul Cook (CA-08-R) who, along with Congressmen Tom McClintock (CA-04-R), and Jim Costa (CA-16-D) have expressed concerns that the BLM's determination prevents water supply and economic benefit to the region. Senator Dianne Feinstein has expressed concerns with the project and has an interest in protecting the desert ecosystem, especially the region surrounding the project." *Evidence*: BLM-002108. | 76.  Undisputed |
| 77. "Cadiz, Inc.; ARZC; Kinder Morgan, and Questar are reported to have significant financial interests to move forward with this proposal to extract and transport groundwater out of the Mojave Desert for use in southern California and the Central Valley." | 77.  Undisputed |

| | |
|---|---|
| *Evidence*:  BLM-002108. | |
| 78. "[SMWD] in Orange County has an interest in having additional water to provide to its own customers as well as several other southern California water districts including: Three Valleys Municipal Water District, Golden State Water Company, Suburban Water Systems, Jurupa Community Services District, and the California Water Service Company."<br><br>*Evidence*:  BLM-002108. | 78.  Undisputed |
| 79. On February 15, 2017, in an email discussing the "[i]ncoming briefing requests on BLM issues," including the Cadiz Project, Acting BLM Deputy Director Jerome Perez told Kathleen Benedetto that the "Cadiz [Project] is tied to the Eagle Crest Project in a parallel fashion for it is all about water in the Desert. That may assist in Eagle Crest moving forward."<br><br>*Evidence*:  BLM-002103. | 79.  Undisputed. |
| 80. On February 15, 2017, Acting BLM Chief of Staff Laura Douglas also wrote to BLM staff that "[t]his [Cadiz] [P]roject is controversial, with significant Congressional interest on both sides."<br><br>*Evidence*:  BLM-002104. | 80.  Undisputed |
| 81. On February 17, 2017, Associate Solicitor Laura Brown sent James Schindler and Special Assistant to the Secretary Downey Magallanes an Information Memorandum regarding *Serrano, et al. v. Union Pacific* | 81.  Undisputed |

| | |
|---|---|
| *Railroad Company, et al.*, D.C. No. 8:15-cv-00718-JVS-DFM (C.D. Cal., May 5, 2015) (Interlocutory Appeal before the Ninth Circuit), which explains that because, "among other reasons, the California state court and the US district court are at odds with [M-36964], DOI has requested that the US file an amicus brief to ensure the Ninth Circuit factors in DOI's views."<br><br>*Evidence*:  BLM-002068. | |
| 82. On February 21, 2017, Associate Solicitor Laura Brown sent BLM officials, including Kathleen Benedetto, Downey Magallanes, James Schindler, and Jermone Perez, a detailed agenda for a briefing on railroad rights-of-way requested by Kathleen Benedetto "to give her a little more background on the 1989 and 2011 M-Opinions regarding railroad rights of way."<br><br>*Evidence*:  BLM-002064. | 82.  Undisputed |
| 83. On February 21, 2017, Associate Solicitor Laura Brown emailed Kathleen Benedetto to schedule a "pre-meeting before the Cadiz meeting on Friday."<br><br>*Evidence*:  BLM-002062. | 83.  Undisputed |
| 84. BLM held the Cadiz Project briefing on Friday, February 24, 2017.<br><br>*Evidence*:  BLM-002057. | 84.  Undisputed |
| 85. Following the Cadiz Project briefing, Jerome Perez circulated a letter from Senator Dianne Feinstein and other members of Congress, | 85.  Undisputed |

| | |
|---|---|
| supporting the Cadiz Determination and expressing concern that the Cadiz Project is "attempting to sidestep federal review" because the water project "poses a dire threat to vital water sources and supplies" serving the Mojave Desert area.<br><br>*Evidence*:  BLM-002054-55. | |
| 86. On March 3, 2017, Kathleen Benedetto emailed Assistant to the Secretary Downey Magallanes that "[she has] folks in [her] office on Cadiz."<br>Benedetto met with Brownstein lobbyist Luke Johnson, and former House Representative and Gavel Resources, LLC lobbyist Richard Pombo, who also lobbies for Cadiz, Inc.<br><br>*Evidence*:  BLM-008519; BLM-008518. | 86.  Undisputed |
| 87. On March 6, 2017, James Cason, Kathleen Benedetto, and Downey Magallanes met to discuss the Cadiz Project.<br><br>*Evidence*:  BLM-002009-11. | 87.  Undisputed |
| 88. A March 13, 2017 BLM Task Matrix, sent to Acting Deputy Secretary James Cason and titled "Deputy Secretary Assignments Follow up List," shows that Cason directed interior officials to "get rid of the Hillary [sic] opinion, to leave the matter up to the railroad right of ways."<br><br>*Evidence*:  BLM-001996. | 88.  Undisputed. |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*                              29

| | |
|---|---|
| 89. The same Task Matrix shows that Acting Deputy Secretary James Cason also directed then-Special Assistant to the Secretary, Downey Magallanes, to "take the 'M' Opinion, look at the facts, and write an analysis that says the facts suggesting railroad benefits were ignored."<br><br>*Evidence*: BLM-001996. | 89.  Undisputed. |
| 90. The Task Matrix also states that at a "meeting re:Cadiz," Cason asked Benedetto "to revise the IM . . . [s]ooner rather than later."<br><br>*Evidence*: BLM-001996. | 90.  Undisputed. |
| 91. The meeting titled in the Task Matrix as "meeting re:Cadiz" referred to the March 6, 2017 meeting between James Cason, Kathleen Benedetto, and Downey Magallanes.<br><br>*Evidence*: BLM-002009-11. | 91.  Partially disputed.<br><br>Defendants are unable to confirm that the "meeting re: Cadiz" was the March 6, 2017 meeting, as that is not reflected in the record.  But Defendants concede that it could be the referenced meeting. |
| 92. On March 22, 2017, Michael Nedd issued an Information/Briefing Memorandum to address the implications of rescinding Instruction Memorandum No. 2014-122. The Memorandum explained that "[railroad right-of-way] leases are often very lucrative for the railroads in terms of rental fees collected. Some proposed users would prefer to negotiate a lease with the railroad and avoid a federal authorization process."<br><br>*Evidence*: BLM-001028. | 92.  Partially disputed.<br><br>While Plaintiff does provide a direct quote from the Briefing Memorandum, the quote is a reference to BLM's opinion of what the stakeholder's positions might be and not a reference to a position held by BLM.<br><br>*Evidence*: BLM-001028. |
| 93. In the Briefing Memorandum, Nedd further explained that | 93.  Undisputed |

| | |
|---|---|
| "rescinding [IM 2014-122] would simply remove guidance on how BLM might consider whether an existing or proposed activity within an 1875 Act [right-of-way] requires an authorization from BLM, but would not change the Department's legal interpretation that activities within 1875 Act rights of way must seek an authorization from BLM if they do not derive from or further a railroad purpose."<br><br>*Evidence*:  BLM-001029. | |
| 94. In the Memorandum, Nedd also noted that "[t]he BLM must collect fair market rental for qualifying rights of way uses on public lands under provisions in the regulations in Title 43, Code of Federal Regulations, Part 2800, *Rights of Way Under the Federal Land Policy and Management Act*. Rescinding this IM would make the process to authorize qualifying uses in these rights of way more difficult to recover rental due to the United States."<br><br>*Evidence*:  BLM-001030. | 94.  Undisputed |
| 95. On March 20, 2017, in response to the Briefing Memorandum draft circulated on March 17, 2017, John Kalish emailed Michael Smith, asking, "Can we wrap this into the overall investigation in order to not have the [Freedom of Information Act] issue?"<br><br>*Evidence*:  BLM-001031. | 95.  Partially disputed.<br><br>While Plaintiff does provide a direct quote from the identified email, the quote has nothing to do with the proposed rescission of IM 2014-122, the Cadiz Project, or Solicitor's Opinion M-37025.  Instead, the quote is a reference to an ongoing investigation relating to a qui tam lawsuit that was still under seal at that |

| | |
|---|---|
| | time.  Hence, the reference to "investigation."<br><br>*Evidence*:  BLM-001031. |
| 96. On March 28, 2017, Timothy Spisak wrote to Division Chief Robert Jolley, "Do we know what it will take to rescind? Simple IM to make it so?"<br><br>*Evidence*:  BLM-000980. | 96.  Undisputed |
| 97. On March 28, 2017, Robert Jolley replied to Timothy Spisak, "I would think a 1 or 2 pager IM rescinding until further notice and instructing the field what to do in the interim. If there was previous guidance, we could reference that IM/Handbook and revert back to the previous instruction. The M Opinion may complicate it."<br><br>*Evidence*:  BLM-000980. | 97.  Undisputed |
| 98. On Tuesday, March 28, 2017, Richard Bouts emailed several other BLM officials, stating that, "There is a request from the Department (via [Kathleen] Benedetto) to have [IM No. 2014-122] rescinded immediately. (As in first thing Wednesday morning)." Bouts also wrote that "[t]here are apparently legal issues that are driving the need to deal with this immediately."<br><br>*Evidence*:  BLM-000973. | 98.  Undisputed |
| 99. On March 29, 2017, Richard Bouts messaged other BLM officials that Benedetto "was expressing the wishes from higher ups to have this rescinded without being able to explain why. [Maybe] Michael [S]mith can help | 99.  Undisputed |

| | |
|---|---|
| shed some light. We need to be prepared do whatever today." *Evidence*: BLM-008520. | |
| 100. Also on March 29, 2017, Erica Pionke wrote to Tim Spisak to indicate that Spisak should work with John Kalish rather than Robert Jolley on a right-of-way matter in part because "Robert's counsel is vastly different than John's on this issue." *Evidence*: BLM-008521. | 100. Partially disputed. Plaintiffs' selective quotation of the e-mail suggests that Erica Pionke recommended that Timothy Spisak work with John Kalish rather than Robert Jolley because he had different views than John. But in the earlier e-mail in the string, Ms. Pionke clearly states, "You will want to work with John Kalish rather than Robert Jolley. John is now the Division Chief for RR ROWs and he wrote the most recent [briefing paper] on the matter at issue." *Evidence*: BLM-008521 |
| 101. That same day, BLM issued IM No. 2017-060, which rescinded IM No. 2014-122 and IM No. 2012-038 (issued December 2, 2011). *Evidence*: BLM-000971-72. | 101. Undisputed |
| 102. IM 2017-060 ordered that, effective immediately, "[a]ll issues related to addressing activities within railroad rights-of-way granted pursuant to the General Railroad Rights- of-Way Act of March 3, 1875 across [BLM]-managed lands are to be directed to the BLM Washington Office, Energy, Minerals and Realty Management (WO-300) directorate. Field offices will no longer apply the provisions outlined in either | 102. Undisputed |

| | |
|---|---|
| WO IM No. 2014-122 or No. 2012-038." <br><br> *Evidence*:  BLM-000971. | |
| 100.[1] On April 18, 2017, Gareth Rees, Acting Deputy Secretary James Cason, Downey Magallanes, and other BLM officials met with BNSF Railroad to discuss railroad rights-of-way. <br><br> *Evidence*:  BLM-000948. | 100.  Undisputed |
| 101. On May 2, 2017, BLM issued a Draft Key Messages and Talking Points on IM 2017-060: Rescinding IM 2014-122, that stated, "Under its multiple-use mission supporting a variety of working landscapes across the West, the BLM is re-examining many different policies and practices in order to better balance responsible development and provide economic opportunities for all Americans." <br><br> *Evidence*:  BLM-000886-87. | 101.  Partially disputed. <br><br> While Plaintiff provides a direct quote from the Draft Key Messages document, they leave out subsequent bullets that make clear that the legal interpretation of the 1875 Act in Solicitor's Opinion M-37025 was, at the time, still the binding interpretation for BLM.  Plaintiffs appears to suggest that the purpose of rescinding IM 2014-122 did more than it actually did. <br><br> *Evidence*: BLM-00886-87 |
| 102. On May 4, 2017, Cadiz, Inc. counsel Larry Jensen wrote to Acting Deputy Secretary James Cason responding to Cason's request to Jensen for information on the "USGS estimate of groundwater recharge" for the Cadiz Project. <br><br> *Evidence*:  BLM-000890. | 102.  Undisputed |

---

[1] This paragraph is misidentified as 100 and should be paragraph 103.  Defendants have followed the numbering in Plaintiff's statement of facts.

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          34

| | |
|---|---|
| 103. On May 5, 2017, USGS issued a letter to Senator Dianne Feinstein affirming its position that the groundwater recharge for the aquifer Cadiz, Inc. would pump is 2,000-10,000 acre-feet a year. BLM-000853. | 103.  Undisputed |
| 104. On May 22, 2017, SMWD and Cadiz Inc. sent a letter to BLM to "request that [BLM] confirm that the October 2015 evaluation of the Project's proposed use by BLM's California State Office (the '2015 Evaluation') was no longer valid," and to "request that [BLM] confirm that the Project's proposed use is within the scope of ARZC's right-of-way usage." <br><br> *Evidence*:  BLM-000862. | 104.  Undisputed |
| 105. On May 23, 2017, Special Assistant and Acting Director Office of Congressional and Legislative Affairs ("OCL") Micah Chambers wrote to James Cason and other Interior officials, "FYI. Sen. Feinstein letter opposing Cadiz and citing [United States Geological Survey ('USGS')] letter that OCL tried to hold. This won't help any of the Cadiz efforts. Scott and Alan I know you're meeting with Calvert. He'll want to know about this." <br><br> *Evidence*:  BLM-000848. | 105.  Undisputed |
| 106. Chambers also sent the Interior officials a May 23, 2017 letter from Senator Dianne Feinstein to then-Secretary Ryan Zinke. In the letter, Feinstein cited scientific analyses from the USGS and National Park Service (NPS) about how "devastating [Cadiz, | 106.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*                    35

| | |
|---|---|
| Inc.'s] proposal would be to the desert and its wildlife." <br><br> *Evidence*:  BLM-000850 | |
| 107. On June 1, 2017 ARZC President Brad Ovitt sent BLM a follow-up letter that the October 2015 Determination is no longer valid. <br><br> *Evidence*:  BLM-000836. | 107.  Undisputed |
| 108. On May 23, 2017, Senator Feinstein issued a letter to Interior Secretary Ryan Zinke, asking that Secretary Zinke not rescind BLM's October 2, 2015 determination, and expressing opposition to BLM's March 29, 2017 decision to rescind IM 2014-122 and 2012-038. <br><br> *Evidence*:  BLM-000850-52. | 108.  Undisputed |
| 109. On June 30, 2017, BLM issued a temporary suspension of M-37025. In the temporary suspension, BLM wrote that <br><br> "[s]ince issuance of M-37025, the U.S. Supreme Court had discussed in detail the 1875 Act in *Marvin M. Brandt Revocable Trust v. United States*, 134 S.Ct. 1257 (2014) . . . . [T]he rights conveyed under the 1875 Act . . . were at issue in *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines Inc.*, 231 Cal. App. 4th 134 (2014), and [were] at issue in *Serrano et al. v. Union Pacific Railroad Co., et al.*, D.C. Np. 8:15-cv-00718-JVS-DFM (C.D. Cal. May 5, 2015) (preliminary ruling on interlocutory appeal to the Ninth Circuit Court of Appeals) . . . . In light | 109.  Partially disputed <br><br> The memorandum suspending M-37025 was issued by Daniel H. Jorjani, Principal Deputy Solicitor and Acting Solicitor of the U.S. Department of the Interior, not BLM. <br><br> *Evidence*:  BLM-000785. |

| | |
|---|---|
| of these developments, M-37025 should be reviewed to determine if the analysis set forth in the opinion is complete and whether the post-2011 decisions should be factored into the opinion." *Evidence*: BLM-000785. | |
| 110. On July 10, 2017, Michael Nedd emailed Jerome Perez that "the [Secretary and senior officials] on the 6th floor would like to move sooner than later on [the Desert Renewable Energy Conservation Plan] and Cadiz." *Evidence*: BLM-000737. | 110. Undisputed |
| 111. On July 14, 2017, Kathleen Benedetto met with BLM and Interior officials to discuss the Cadiz Project. *Evidence*: BLM-000732. | 111. Undisputed |
| 112. BLM's July 13, 2017 Information/Briefing Memorandum stated that "[t]he Cadiz proposal is in the district of Congressman Paul Cook (CA-08-R) who has expressed support for the project along with Congressmen Tom McClintock (CA-04-R), Jim Costa (CA-16-D), Darryl Issa (CA-49-R), and Congresswoman Mimi Walters (CA-45-R). Senator Feinstein has expressed strong opposition to the project . . . ." *Evidence*: BLM-000730. | 112. Undisputed |
| 113. On July 17, 2017, SMWD and Cadiz, Inc. sent BLM a letter to renew their May 22, 2017 request that BLM: (1) clarify that the October 2015 evaluation by BLM is no longer valid; | 113. Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          37

| | |
|---|---|
| and (2) "confirm that the Project's proposed use of the right-of-way for a water pipeline and related improvements will further railroad purposes and is within the scope of the right-of-way."<br><br>*Evidence*:  BLM-000163. | |
| 114. "To assist BLM in its 'assessment,' [Cadiz, Inc.] submitted voluminous files and information that outlined the railroad purposes that [would] be furthered by the Project… Those materials [were] again submitted with this letter to [BLM's] office for [BLM's] consideration."<br><br>*Evidence*:  BLM-000164. | 114.  Undisputed |
| 115. On July 28, 2017, Luke Johnson met with Timothy Spisak, Michael Nedd, and John Kalish.<br><br>*Evidence*:  BLM-000161. | 115.  Undisputed |
| 116. On August 1, 2017, Larry Jensen, counsel for Cadiz, Inc. and Acting Solicitor and Principal Deputy Solicitor of the Department of the Interior Dan Jorjani held a teleconference regarding the Cadiz Project and the scope of ARZC's 1875 Act right-of-way.<br><br>*Evidence*:  BLM-008033-35. | 116.  Undisputed |
| 117. Interior officials met with Laborers' International Union of North America ("LIUNA") representatives on August 29, 2017 to discuss the Cadiz Project.<br><br>*Evidence*:  BLM-000101. | 117.  Disputed.<br><br>This document indicates that the meeting scheduled between Interior Officials and LIUNA was canceled.<br><br>*Evidence*: BLM-00101 |

| | |
|---|---|
| 118. On September 1, 2017, Daniel H. Jorjani distributed M-37048, a memorandum with the subject, "Withdrawal of Solicitor's Opinion M-37025 issued on November 4, 2011, and Partial Withdrawal of Solicitor's Opinion M-36964 issued on January 5, 1989."<br><br>*Evidence*: BLM-000075. | 118.  Undisputed |
| 119. Reversing the position of the prior administration, Jorjani concluded that "the rights-of-way granted to railroad companies under the 1875 Act allow railroad companies to lease portions of their easements to third parties without permit or grant from [BLM] provided that such leases are limited to the surface, broadly defined, of the easement and do not interfere with the continued use of the easement as a railroad."<br><br>*Evidence*: BLM-000076. | 119.  Undisputed |
| 120. Jorjani also concluded that, "under the incidental use doctrine, a railroad may undertake commercial activity, including authorizing a third party to undertake commercial activity, as long as the activity is incidental to the operation of the railroad and a 'free and safe passage is left' for the operation of the railroad."<br><br>*Evidence*: BLM-000097. | 120.  Undisputed |
| 121. On September 13, 2017, several Interior and BLM officials met to discuss the Cadiz Project.<br><br>*Evidence*: BLM-000056. | 121.  Undisputed |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*                    39

| | |
|---|---|
| 122. On September 22, 2017, several Interior and BLM officials met to discuss the Cadiz Project.<br><br>*Evidence*:  BLM-000042. | 122.  Undisputed |
| 123. On September 20, 2017, John Kalish wrote to Mike Smith that the Cadiz Project's approval was "on the fast track."<br><br>*Evidence*:  BLM-000043. | 123.   Undisputed |
| 124. The First edit of a Draft BLM Determination read:<br><br>"In light of Opinion M-37048, the BLM's October 2015 administrative determination is rescinded, as it relied on the prior interpretation of the legal scope of those rights-of-way. The BLM has no information indicating that the Cadiz [P]roject would interfere with continued use of the easement for railroad operations and, in any event, has determined that the project is incidental to railroad operations. This includes the proposed elements of the project within the 1875 Act grant including the water conveyance pipeline with in-line turbines and the fire suppression system, the fiber optic subcomponent, as well as the access road, the power line and facilities it supports, and the steam-based excursion train including appurtenant facilities. The Cadiz Project is therefore within the scope of [ARZC's] rights under its 1875 Act grant, and thus does not require any additional authorization by the BLM." | 124.  Undisputed |

| | |
|---|---|
| *Evidence*:  BLM-000043. | |
| 125. In the Draft BLM Determination, "[John Kalish] included all [Project components] . . . in order to remove any uncertainty, even though the determination focused in on the water line, sprinklers and fiber optic subcomponent."<br><br>*Evidence*:  BLM-000043. | 125.  Undisputed |
| 126. On October 13, 2017, BLM sent ARZC, Cadiz, Inc., and SMWD a determination expressly superseding the 2015 Administrative Determination and authorizing Cadiz, Inc. to construct and operate the pipeline without a FLPMA permit.<br><br>*Evidence*:  BLM-000007; BLM-000004; BLM-000001. | 126.  Partially disputed<br><br>BLM's October 13, 2017 letter did not authorize Cadiz to do anything. Instead, the letter stated that, "the proposed activity falls within the scope of rights granted to the Arizona and California Railroad (ARZC) under the General Railroad Right-of-Way Act of March 3, 1875 (1875 Act), and therefore does not require authorization from BLM."<br><br>*Evidence*: BLM-000004 |
| 127. The October 2017 determination concluded that the Cadiz Project falls within the scope of rights granted to the ARZC under the 1875 Act because it "would not interfere with the continued use of the easement for railroad operations, nor would the proposed activities extend beyond the surface of the easement, broadly defined," and therefore does not require authorization by BLM.<br><br>*Evidence*:  BLM-000002; BLM-00005; BLM-00008. | 127.  Undisputed |
| 128. BLM additionally concluded "that the activities proposed in the Cadiz | 128.  Undisputed |

| | |
|---|---|
| Project further a railroad purpose, even if they do not originate or derive from that purpose." BLM wrote that "[a]s the railroad itself describes, these component elements of the Cadiz [P]roject all provide 'critical benefits' to the railroad that facilitate elements of its operations."<br><br>*Evidence*:  BLM-000002; BLM-000005; BLM-000008. | |
| 129. Cadiz, Inc. issued a press release on October 16, 2017, which stated: "With the receipt of this definitive determination by the BLM, the Company will now turn its attention to final engineering design, contract arrangements with its participating agencies and a conveyance agreement with the Metropolitan Water District of Southern California in accordance with applicable law."<br><br>The press release also stated that "no further federal permits or authorizations are required for Project construction within the ARZC railroad right-of-way."<br><br>*Evidence*:  *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. CV 17-8587-GW(ASX), 2018 WL 3004594, at *4 (C.D. Cal. June 8, 2018) [ECF No. 31] | 129.  Disputed.<br><br>The press release is an extra-record document and therefore may not be considered for purposes of deciding the merits of Plaintiff's claims.  *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). |
| 130. On November 27, 2017, BLM released the 2017 Instruction Memorandum No. 2018-014, titled, "Third-Party Uses on Railroad Rights-of-Way under the General Railroad Right-of-Way Act of March 3, 1875." | 130.  Undisputed |

| | |
|---|---|
| IM No. 2018- 014 states that the policy of BLM is that "an authorization from the BLM for existing or proposed uses within 1875 Act rights-of-way, including third party uses, is generally unnecessary."<br><br>*Evidence*:  BLM Instructional Memorandum No. 2018-14,*Third-Party Uses on Railroad Rights-of-Way under the General Railroad Right-of-Way Act of March 3, 1875* (Nov. 27, 2017). | |
| 131. Additionally, IM 2018-014 directs BLM employees to "no longer take an active role in reviewing existing or proposed uses within 1875 Act [rights-of-way]."<br><br>*Evidence*:  BLM Instructional Memorandum No. 2018-14, *Third-Party Uses on Railroad Rights-of-Way under the General Railroad Right-of-Way Act of March 3, 1875* (Nov. 27, 2017). | 131.  Undisputed. |
| 132. On February 12, 2016, President Barack Obama established the Mojave Trails National Monument ("Mojave Trails") by presidential proclamation, pursuant to the Antiquities Act of 1906, 54 U.S.C. § 320301. Proclamation No. 9395, 81 Fed. Reg. 8,371 (February 12, 2016) (Establishment of the Mojave Trails National Monument).<br><br>*Evidence*:  BLM-002108. | 132.  Undisputed. |
| 133. Mojave Trails encompasses 1.3 million acres of pristine desert land. | 133.  Undisputed. |

| | |
|---|---|
| *Evidence*:  BLM-002054. | |
| 134. In February 2000, the USGS reviewed the *Cadiz Groundwater Storage and Dry-Year Supply Program Draft Environmental Planning Technical Report.*<br>"As part of the review, the USGS calculated estimates of natural recharge to the Fenner, Bristol, and Cadiz basins, which ranged from approximately 2,000 to 10,000 acre-feet per year."<br><br>*Evidence*:  BLM-000922. | |
| 135. On April 19, 2017, USGS reaffirmed the groundwater recharge rate values for the Cadiz Project.<br><br>*Evidence*:  BLM-000924. | 135.  Partially disputed.<br><br>The USGS Correspondence Briefing did reaffirm the groundwater recharge rate values it had assessed in 2000 as it related to Cadiz, Inc. then-proposed project.  USGS, however, noted in this briefing that this reaffirmed only its assessment from 2000, stating:<br><br>"We note that we are not aware of new information that would change our recharge estimates, but we have not reviewed the current proposed Cadiz water extraction project. Nor have we conducted new site-specific studies or data collection in the Cadiz area since our 2000 review.<br><br>We also explain that updating our 2000 estimate of recharge in the Cadiz area would be a significant undertaking, requiring a detailed review of new studies since 2000, along with new data collection, analyses, and modeling." |

| | |
|---|---|
| | Plaintiff's apparent suggestion that USGS conducted additional analysis to confirm its findings in 2000 is misleading.<br><br>*Evidence*:  BLM-000924, BLM-000930. |
| 136. On December 5, 2011, SMWD issued a Draft Environmental Impact Report ("DEIR") pursuant to CEQA to provide "information about the potential effects on the local and regional environment associated with the construction and operation of the proposed [Cadiz Project]."<br><br>*Evidence*:  BLM-004955. | 136.  Partially disputed.<br><br>While SMWD did prepare the DEIR pursuant to CEQA to provide information about the potential effects of the Cadiz Project, it also served to "suggest[s] mitigation measures to reduce any significant impacts to less than significant."<br><br>*Evidence*:  BLM-004955 |
| 137. On February 13, 2012, the NPS commented on the SMWD DEIR.<br><br>*Evidence*:  BLM-000934-39. | 137.  Undisputed. |
| 138. Among other conclusions, NPS determined that the DEIR's recharge estimates are 3 to 16 times higher than actual rates, and that the DEIR's estimates of the annual recharge (and discharge) for the Cadiz Project watershed in the range of 30,000 AFY "are not reasonable and should not even be considered."<br><br>*Evidence*:  BLM-000934; BLM-000936. | 138.  Undisputed. |
| 139. NPS also stated that "[a]vailable evidence indicates that some springs within Mojave National Preserve likely are hydraulically continuous with the | 139.  Undisputed. |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          45

| | |
|---|---|
| aquifer that is the target of the subject groundwater development . . . ." | |
| *Evidence*:  BLM-000936. | |
| 140. NPS explained that SMWD's DEIR "failed to adequately consider inclusion of monitoring and mitigation developed under the earlier Cadiz Project, and to adequately demonstrate the effectiveness of certain current mitigation measures proposed to address pumping-related impacts." *Evidence*:  BLM-000938. | 140.  Undisputed. |
| 141. An April 2018 study in the peer-reviewed scientific journal *Environmental Forensics* provides additional evidence that there is a 'hydraulic connection' between Bonanza Spring and the aquifer that Cadiz, Inc. plans to draw water from. The study indicates that the water drawn from the aquifer would be in excess of the groundwater recharge to the basin, resulting in basin aquifer drawdown and a potentially substantial decrease in free-flowing water from the spring. *Evidence*:  Clarke Dec. ¶ 12. | 141.  Disputed. The study and the declaration citing it are extra-record documents and therefore may not be considered for purposes of deciding the merits of Plaintiff's claims. *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). Defendants do not object to the consideration of these documents solely for purpose of deciding whether Plaintiff has standing. |
| 142. A subsequent study, published in September 2018 in the peer-reviewed scientific journal *Hydrology*, affirms that Bonanza Spring is fed by the same aquifer from which Cadiz, Inc. plans to draw water, and further demonstrates that four other springs in Mojave Trails are also fed at least in part by the same aquifer. That study also significantly undermines Cadiz, Inc.'s claims | 142.  Disputed. The study and the declaration citing it are extra-record documents and therefore may not be considered for purposes of deciding the merits of Plaintiff's claims. *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 |

| | |
|---|---|
| regarding the rate of aquifer recharge, providing evidence that Cadiz, Inc.'s purported recharge rate estimates are three to fifteen times too high.<br><br>*Evidence*:  Clarke Dec. ¶ 13. | F.3d 930, 943 (9th Cir. 2006). Defendants do not object to the consideration of these documents solely for purpose of deciding whether Plaintiff has standing. |
| 143. Bonanza Spring provides freshwater for resident and migratory wildlife. Bonanza Spring is the most significant regional surface water source in Mojave Trails, and the closest major surface water source to the Cadiz Project. The drawdown will disrupt larger migration patterns because the area serves as a stopover point for wildlife, as it has for thousands of years.<br><br>*Evidence*:  Lamfrom Dec. ¶ 16. | 143.  Disputed.<br><br>The declaration is an extra-record document and therefore may not be considered for purposes of deciding the merits of Plaintiff's claims.  *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006).  Defendants do not object to the consideration of this document solely for purpose of deciding whether Plaintiff has standing. |
| 144. NPCA is a nonpartisan, non-profit organization headquartered in Washington, D.C. whose mission is to provide an independent voice for protecting and enhancing America's National Park System for present and future generations. NPCA has over 1.3 million members and supporters nationwide.<br><br>*Evidence*:  Lamfrom Dec. ¶ 4. | 144.  Undisputed. |
| 145. NPCA members use, enjoy, and work to preserve and protect the National Park System and other protected federal lands with an ecological, management, or other nexus to National Parks, including [Mojave Trails] . . . . NPCA and its members are actively engaged in protecting the viewsheds, soundscapes, | 145.  Undisputed. |

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*          47

| | |
|---|---|
| airsheds, watersheds, and other values that make Mojave Trails unique and worthy of protection for the American people.<br><br>*Evidence*:  Lamfrom Dec. ¶ 5. | |
| 146. As part of its work, NPCA and its members advocated for, and participated in the efforts to create the Mojave Trails National Monument.<br><br>*Evidence*:  Lamfrom Dec. ¶ 25. | 146.  Undisputed. |
| 147. NPCA members are photographers, birders, hikers, and observers of desert wildlife and rare plants in Mojave Trails.<br><br>*Evidence*:  Lamfrom Dec. ¶ 17. | 147.  Undisputed. |
| 148. NPCA members' organizational, aesthetic, and recreational interests have been, and will continue to be, harmed by the 2017 M-Opinion and Cadiz Determination, because the construction and maintenance of the pipelinewould impair NPCA members from enjoying and using Mojave Trails.<br><br>*Evidence*:  Clarke Dec. ¶¶ 8, 18-20, 22; Lamfrom Dec. ¶¶11, 18-24. | 148.  Undisputed. |

DATED:  May 10, 2019           Respectfully submitted,

                              JEAN E. WILLIAMS
                              Deputy Assistant Attorney General
                              Environment & Natural Resources Division
                              U.S. Department of Justice

                              */s/ Luther L. Hajek_____*
                              Luther L. Hajek

*Defendants' Local Rule 56-2 Statement of Genuine Disputes of Material Fact in Response to National Parks Conservation Association*            48

Trial Attorney (CO Bar No. 44303)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel | (303) 844-1376
Fax | (303) 844-1350
Email:  Luke.Hajek@usdoj.gov

*Attorneys for Defendants*